IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| EVRAZ OREGON STEEL MILLS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>CONTINENTAL INSURANCE COMPANY, a Pennsylvania corporation,<br><br>Defendant/Third-Party Plaintiff,<br><br>v.<br><br>INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, a foreign insurance company,<br><br>Third-Party Defendant/ Third-Party Plaintiff,<br><br>v. | ) | Civil No. 08-447 -JE<br><br>FINDINGS AND RECOMMENDATION |

AMERICAN HOME ASSURANCE COMPANY, )
)
Third-Party Defendant/ )
Third-Party Plaintiff, )
)
v. )
)
TIG INSURANCE COMPANY, )
)
Third-Party Defendant/ )
Third-Party Plaintiff, )
)
v. )
)
FIREMAN'S FUND INSURANCE COMPANY, )
)
Third-Party Defendant. )
)
)

Kerry J. Shepherd
Markowitz Herbold Glade & Mehlhaf, P.C.
1211 S.W. 5th Avenue, Suite 3000
Portland, OR 97204

Attorney for Plaintiff Evraz Oregon Steel Mills, Inc. and Third-Party Defendant TIG Insurance Company,

Brian W. Walsh
Colliau Elenius Murphy Carluccio Keener & Morrow
405 Howard Street, Suite 620
San Francisco, CA 94015

Lawrence Gottlieb
Troy A. Biddle
Betts Patterson Miles
701 Pike Street, Suite 1400
Seattle, WA 98104

Attorneys for Defendant/Third-Party Plaintiff Continental Insurance Company

Thomas W. Brown
Michael C. Lewton
Cosgrave Vergeer Kester, LLP
805 S.W. Broadway, 8th Floor
Portland, OR 97205

W. David Campagne
Kenneth H. Sumner
Sinnott, Ditto, Moura & Puebla, P.C.
555 Montgomery Street, Suite 720
San Francisco, CA 94111

Attorneys for Third-Party Defendants/Third-Party Plaintiffs Insurance Company of the State of Pennsylvania and American Home Assurance Company,

JELDERKS, Magistrate Judge:

Plaintiff Evraz Oregon Steel Mills, Inc. (Oregon Steel) brings this action to enforce its alleged right to defense for environmental claims under policies issued by a predecessor of defendant The Continental Insurance Company (Continental). Continental brings a counterclaim against Oregon Steel and third-party claims against third-party defendants, the Insurance Company of the State of Pennsylvania (ICSOP) and American Home Assurance Company (AHAC). These third-party defendants, in turn, bring third-party claims against third-party defendant TIG Insurance Company (TIG).

Now pending before the court is a motion for summary judgment brought by ICSOP and AHAC seeking to "establish as a matter of law that Continental is not entitled to contribution from neither [sic] ICSOP nor AHAC for past, present, or future defense expenses arising out of claims at the Portland Harbor Superfund Site in Portland, Oregon ('Portland Harbor Claim')." For the reasons set out below, the motion should be denied.

**Background**

Plaintiff Oregon Steel owns and in the past has owned, leased, or occupied real property that is in and near areas that have been designated as the "Portland Harbor Superfund Site" (Superfund Site) by the United States Environmental Protection Agency (EPA). The EPA and other agencies, including the Oregon Department of Environmental Quality (DEQ) and the Trustees for Natural Resource Damages (NRD Trustees), have alleged that Oregon Steel is a potentially responsible party (PRP) for contamination at the Superfund Site.

Plaintiff Oregon Steel tendered defense of the claims made against it by these agencies to third-party defendant TIG pursuant to a series of insurance policies issued by TIG from 1976 through 1990. It also tendered defense of the claims to Firemen's Fund Insurance Company (FFIC), based upon coverage FFIC had provided from 1974 through 1975. In addition, it tendered defense of the claims to defendant/third-party plaintiff Continental, the successor to The Fidelity and Casualty Company of New York (Fidelity), which had issued policies covering Oregon Steel from January 1, 1968, through January 1, 1974, and tendered defense to ICSOP based on policies in effect for most of the period from January, 1970, through April, 1978. For some time, TIG, Continental, and FFIC agreed to share the costs of defending plaintiff Oregon Steel.

FFIC stopped contributing to the defense costs as of April 30, 2006, based upon a settlement it reached with Oregon Steel purporting to extinguish all of its liability pursuant to policies it had issued to plaintiff.

Each policy issued by TIG provided $500,000 in primary insurance to Oregon Steel, and each policy included the obligation to pay damages incurred through property damage covered

by the policy, and to defend any action against Oregon Steel seeking damages incurred because of property damage. Under these policies, TIG's obligation to defend Oregon Steel terminates "after the applicable limit of [TIG's] liability has been exhausted by payment of judgments or settlements."

TIG defended Oregon Steel against claims related to the Superfund Site until it entered into a Settlement Agreement with Oregon Steel on October 19, 2006. In settling its coverage dispute with Oregon Steel, TIG agreed to pay Oregon Steel $4,500,000 within 15 days, pay 55.55% of all invoices submitted by Oregon Steel on or before October 19, 2006, and to assign to Oregon Steel all its right to recover amounts it had expended in the defense or settlement from other potentially responsible parties or other insurance companies. The sum of $4,500,000 was designated as future indemnity costs, and TIG's policies were deemed to be exhausted as of October 19, 2006. In return for TIG's payment, Oregon Steel agreed to "fully, forever and irrevocably release" TIG from all insurance coverage claims related in any way to the policies that TIG had issued to it between 1976 and 1990. The Settlement Agreement provided that all of those policies were "deemed to have been exhausted" by the settlement.

Third-party defendant/third-party plaintiff ICSOP provided excess insurance policies to Gilmore Steel, the predecessor of plaintiff Oregon Steel, which require it to defend and indemnify Oregon Steel under specified circumstances. ICSOP's excess insurance policies were in effect for all but a few months from January 1, 1967, through April 1, 1978. Third-party defendant/third-party plaintiff AHAC is alleged to have issued an excess insurance policy,

effective from January 1, 1964, through January 1, 1967, that likewise requires it to defend and indemnify Oregon Steel under certain circumstances.[1]

In October, 2006, following Oregon Steel's settlements with FFIC and third-party defendant TIG, defendant/third-party plaintiff Continental agreed to assume Oregon Steel's reasonable and necessary defense costs, subject to a reservation of rights. In the present action, plaintiff Oregon Steel alleges that, since October 19, 2006, the date of Oregon Steel's settlement with third-party defendant TIG, defendant/third-party plaintiff Continental "has failed or refused to timely provide a full defense to plaintiff."

In response to Oregon Steel's action, defendant/third-party plaintiff Continental brings a counterclaim seeking a declaration that its policies provide no indemnity coverage, and asserts several affirmative defenses. Continental also brings third-party claims against ICSOP and AHAC alleging that these companies have a duty to defend and/or indemnify Oregon Steel. ICSOP and AHAC in turn filed fourth-party complaints against TIG alleging that policies issued by TIG either were not fully exhausted, or were exhausted prematurely in an attempt to terminate TIG's obligation to defend Oregon Steel.[2]

Subject to a reservation of rights, since April 8, 2008, ICSOP has been reimbursing Continental for 50% of Oregon Steel's defense costs.

Earlier proceedings addressed a motion for summary judgment brought by fourth-party defendant TIG and a motion for partial summary judgment brought by Oregon Steel.

I recommended that TIG's motion for summary judgment be denied because I concluded

---

[1]The parties have not located the policy issued by AHAC that forms the basis of Continental's claims against AHAC.

that TIG had "not established that it has satisfied either its defense or indemnification obligations. . . ."

In an Opinion and Order filed on March 20, 2009, the Hon. Michael Mosman adopted my recommendation that TIG's motion for summary judgment be denied, that Oregon Steel's motion for partial summary judgment be granted to the extent that Continental's general duty to defend was established, and that Oregon Steel's motion to stay Continental's counterclaim, defenses, and third party claims against ICSOP and AHAC be granted.

In the pending motion for summary judgment, ICSOP and AHAC seek an Order establishing that defendant/third-party plaintiff Continental is not entitled to contribution from either of them "for past, present, or future defense expenses arising out of claims at the Portland Harbor Superfund Site in Portland, Oregon. ICSOP and AHAC contend that, because Continental's policies have not been exhausted, as excess insurers, they are not required to defend Oregon Steel in the underlying action, or to provide contribution to Continental for defense costs it has incurred.

**Summary Judgment Standards**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. Id. When the moving

party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. Id. at 324.

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. Id. at 630-31. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985). No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## Discussion

1. Preliminary Issues

Before setting out my reasons for concluding that the pending motion should be denied, I briefly note my disagreement with Continental's contentions that the present motion violates the portion of the earlier decision in this action staying in part its counterclaims, defenses, and third-party claims, and that the moving parties' current agreement to share defense costs precludes granting of the pending motion. I must also briefly address Oregon Steel's assertion that the moving parties' are not entitled to summary judgment because they are "potentially liable" insurers within the meaning of Oregon statutes concerning responsibility for environmental damage.

Continental notes that, in my earlier Findings and Recommendation, I recommended that the motion to stay adjudication of its third-party claims against ICSOP and AHAC be stayed,

and that this recommendation was adopted. Continental contends that the present motion violates the stay, and deprives it of the opportunity to even "conduct discovery, or otherwise prosecute its third-party claims" against these insurers.

In the present motion, ICSOP and AHAC seek a determination that Continental cannot prevail on its third-party claim against them for contribution of defense costs. The moving parties correctly note that Oregon Steel originally requested a stay of Continental's third-party claims for indemnity, not for stay of the claims for defense costs at issue in the present motion: As noted in the Findings and Recommendation in the earlier proceedings, Oregon Steel sought to stay Continental's third-party complaints against ICSOP and AHAC only to the extent that Continental raised issues of indemnity that put it in a "conflictive position" as to the underlying claims, and did not oppose proceeding on those claims to the extent Continental sought to establish these parties' obligation to share in defense costs. Id. at 18. The present motion requires examination of the defense obligations of, and relative equities between, Continental and ICSOP and AHAC as primary and excess insurers. It does not require the court to consider the issues of liability or indemnity that were addressed in the earlier motion. I am satisfied that resolution of the present motion does not require an examination of issues that favored granting the earlier motion to stay.

I am also satisfied that the moving parties' present agreement to share in defense costs does not preclude granting of the motion for summary judgment. ICSOP and AHAC, like Continental itself, are sharing the costs of Oregon Steel's defense pursuant to a full reservation of rights. Under these circumstances, ICSOP and AHAC are not precluded from arguing that they are not responsible for defense costs.

I will next briefly address Oregon Steel's contention that Or. Rev. Stat. § 465.480(4) requires denial of the pending motion. As noted in the previous Findings and Recommendation, this section provides that an insurer that has paid an environmental claim "may seek contribution from any other insurer that is liable or potentially liable" for the claim. For the reasons set out below, I am satisfied that ICSOP and AHAC are "potentially liable" insurers within the meaning of § 465.480(4). However, because Oregon Steel has not fully clarified what it means by this contention, I must set out my understanding of the statutory meaning of "potentially liable."

My conclusion that the moving parties qualify as "potentially liable" insurers reflects my determination that these parties may be liable for defense expenses now, and the conclusion that they are not presently obligated, but might become obligated later. Interpreting § 465.480(4) in a manner purporting to extend jurisdiction to entities or individuals who are not potentially liable now but whom could become liable in the future could be inconsistent with the limitation of this court's jurisdiction to issues presenting "a concrete case or controversy." See, e.g., Western Oil and Gas Ass'n v. Sonoma County, 905 F.2d 1287, 1291 (9th Cir. 1990). That limitation precludes jurisdiction when resolution of a dispute will turn on future developments that cannot be presently ascertained. See id. If I had concluded that the moving parties could not be liable now, but could become liable later upon the exhaustion of all primary coverage, I would recommend denying the motion for summary judgment.

2. Analysis

a. Moving Parties' Contentions

In their present motion for summary judgment, ICSOP and AHAC seek to establish that Continental is not entitled to contribution from either of them "for past, present, or future

defense expenses arising out of claims at the Portland Harbor Superfund Site in Portland, Oregon ('Portland Harbor Claim')." ICSOP and AHAC note that, in earlier proceedings, this court concluded, that, though the settlement between TIG and Oregon Steel purported to irrevocably and forever release TIG from Oregon Steel's coverage claims, TIG had not established that it has satisfied its defense or indemnification obligations. However, they assert that the present motion is not based upon "any obligations of TIG or FFIC," but instead "seeks to establish the relative equities between Continental's primary policies and the excess insurance afforded by ICSOP and AHAC."[3] ICSOP and AHAC assert that "Continental cannot establish superior or equal equities as between it and ICSOP or AHAC," and that "Continental's status as a primary insurer assigns it with the primary obligation to defend [Oregon Steel.]" Mem. of ICSOP and AHAC in support of motion for summary judgment at 2.

In support of their motion for summary judgment, ICSOP and AHAC correctly note that an excess insurer's obligations ordinarily begin when the obligation of a primary insurer is extinguished by exhaustion of the limits of the primary coverage. E.g., Maine Bonding & Cas. Co. v. Centennial Ins. Co., 298 Or. 514, 520, 693 P.2d 1296, 1300 (1985). They in effect argue that primary insurance policies are "underlying" with respect to excess coverage providers like themselves whether or not the primary insurance policies are directly beneath the excess policies during particular years.

ICSOP and AHAC contend that they are not obligated to defend Oregon Steel because the primary coverage available under policies for which Continental is responsible has not been

[3]In analyzing the pending motion, like the parties, I will assume both that AHAC issued a relevant policy, and that his policy included the same terms that are included in relevant policies issued by ICSOP.

exhausted. They contend that they are obligated to defend Oregon Steel only if all primary insurance that includes an obligation to provide a defense has been exhausted. The moving parties rely on several specific provisions in the policies they issued, and upon their assertion that, under Oregon law, an excess insurer cannot become obligated to defend an insured until complete "horizontal exhaustion" of primary insurance has occurred.

In evaluating the pending motion to dismiss, and determining what primary insurance policies might constitute "underlying" insurance from the perspective of the excess insurance policies, we must remember when the primary insurance policies issued by Continental and other insurers were in place, and when the moving insurers' policies provided excess coverage. Assuming for the purposes of this motion that AHAC provided excess coverage from 1964 through 1967, the moving parties provided nearly continuous excess coverage from 1964 through April, 1978. The Fidelity policies for which Continental is responsible provided primary coverage from 1968 through 1974. Therefore, during several of the years in which the moving parties provided excess coverage, no primary policies for which Continental is responsible were in place.

I am satisfied that the appropriate disposition of the pending motion for summary judgment does not require determination of whether Oregon law generally requires "horizontal" exhaustion of all "underlying" primary coverage before an excess insurer may be liable. The question turns instead on the intentions of parties to the insurance agreements concluded between Oregon Steel and the moving parties. See, e.g., Groshong v. Mutual of Enumclaw Ins. Co., 329 Or. 303, 307, 985 P.2d 1284

(1999); Holloway v. Republic Indemnity Co. of America, 341 Or. 642,

649, 147 P.3d 329 (2006) (in interpreting policy, goal of court is to ascertain intention of parties). The parties' intent is determined according to the terms and conditions in the policy. Id.

In determining the parties' intention, the court begins "with the wording of the policy, applying any definitions contained in the policy and otherwise giving words their plain, ordinary meanings." Fred Shearer & Sons, Inc. v. Gemini Insurance Co., 237 Or. App. 468, 480, 240 P.3d 67, 75 (2010). Interpretation of any disputed term that "is susceptible to more than one plausible interpretation" requires the court to "examine the term in the broader context of the policy as a whole." Id. (citing Hoffman Construction Co. v. Fred S. James & Co., 313 Or. 464, 470, 836 P.2d 703 (1992)).

Applying these principles to the ICSOP policies included in the record before the court supports only the conclusion that the pending motion for summary judgment should be denied.[4]

Analysis must begin with the examination of the kind of "occurrence" that is covered by these policies. ICSOP policies explicitly state that, if other conditions are met, the insurer will pay damages arising out of an "occurrence," defined by policy as

> an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in . . . property damage . . . during the policy period.

In the underlying environmental action, it appears that acts are alleged to have occurred which caused property damage during the "policy period" covered by a number of ICSOP's policies.

---

[4] As noted above, the parties apparently have been unable to locate the policy or policies allegedly issued by AHAC. No copies of ICSOP policies in place between 1967 and 1969 and 1976 through April, 1977, have been provided either. Even if I otherwise agreed with the moving parties' arguments, without the opportunity to review those policies, I would not be inclined to recommend granting the motion.

Given that the policies premise potential liability on damage occurring to property during the specific period in which a policy is in place, in determining whether coverage has been exhausted, the focus must be on the particular periods of time covered by the policies. In the absence of any Continental policies covering Oregon Steel during certain of the years during which ICSOP policies were in place, there is simply no Continental coverage to exhaust before ICSOP might be liable for some of the policy periods.

Numerous other provisions of ICSOP's policies also require the conclusion that ICSOP may be obligated to defend Oregon Steel for years in which Continental provided no coverage, even if Continental's coverage has not been exhausted for policy periods in which both Continental and ICSOP provided coverage. The ICSOP policies in the record before the court include a provision captioned "MAINTENANCE OF UNDERLYING INSURANCES." This provision states that

> It is a condition of this policy that the policy or policies referred to in the attached "Schedule of Underlying Insurances" shall be maintained in full effect during the currency of this policy except for any reduction of the aggregate limit or limits contained therein solely by payment of claims in respect of accidents and or occurrences occurring during the period of this policy.

This provision is important in understanding the "LIMIT OF LIABILITY" clause in ICSOP's policies, which states that the insurer "shall only be liable for the ultimate net loss the excess of . . . the limits of the underlying insurances as set out in the schedule in respect of each occurrence covered by said underlying insurances . . . ." During those years in which no Continental policies were in place, Continental of course did not provide any of the "underlying insurance" referred to in the "schedule." Therefore, there could be no Continental coverage to be exhausted before ICSOP's potential liability attached. Based upon the terms of ICSOP's

policies, the court simply cannot conclude that, from 1974 through 1978, ICSOP and Oregon Steel somehow agreed that exhaustion of (nonexistent) coverage by Continental was relevant to ICSOP's obligations.

The "LOSS PAYABLE" provision also supports the conclusion that ICSOP's liability as to years during which Continental provided no coverage does not depend on exhaustion of Continental's coverage for other policy periods. This provision states that

> Liability under this policy with respect to any occurrence shall not attach unless and until the Assured, or the Assured's underlying insurers shall have paid the amount of the underlying limits on account of such occurrence . . . .

As noted above, "underlying insurers" are defined in other policy provisions as those insurers who provide the policies referenced in the "schedule" attached to ICSOP's policy. During the years in which it provided no coverage, Continental of course was not an "underlying insurer" within the meaning of the ICSOP policies. If it were not an "underlying insurer" during those years, there was no Continental coverage to exhaust before ICSOP's obligation arose.

The "OTHER INSURANCE" provision in ICSOP policies states that

> If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this policy . . . the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance.

For the years in which ICSOP provided coverage, but Continental did not, there was no Continental coverage available to cover a loss "also covered" by an ICSOP policy. Exhaustion of any coverage provided by Continental as to other years is irrelevant, under this provision, to losses that "occurred" during years in which Continental provided no coverage.

Finally, each of the ICSOP policies in the record before the court included a specific defense endorsement requiring ICSOP to defend the insured in any litigation alleging loss

arising from property damage if there is "no underlying insurance against loss or claim covered" by the policy. As noted above, during years in which its policies were not in effect, Continental did not provide coverage defined as "underlying insurance" within the meaning of ICSOP's policies. Accordingly, ICSOP's obligation to defend against losses that occurred during those years cannot be related to exhaustion of Continental's obligations as to other years.

In analyzing whether the motion for summary judgment should be granted, we need look no further than the insurance policies in the record before the court. The cited provisions of those policies preclude the conclusion that, simply because Continental's coverage for certain years has not been fully exhausted, the moving parties are not obligated for contribution of defense costs.

## Conclusion

The motion for partial summary judgment brought by ISCOP and AHAC (# 82) should be DENIED.

## Scheduling Order

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due February 7, 2011. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 19th day of January, 2011.

/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge