IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EVRAZ INC., N.A., a Delaware
Corporation,

                Plaintiff,

        v.

RIDDELL WILLIAMS P.S.

        v.

THE CONTINENTAL INSURANCE
COMPANY, a Pennsylvania Corporation;
CENTRAL NATIONAL INSURANCE
COMPANY OF OMAHA, a Nebraska
Corporation; CENTURY INDEMNITY
COMPANY, a Pennsylvania Corporation;
GRANITE STATE INSURANCE
COMPANY, a Pennsylvania Corporation;
AMERICAN HOME ASSURANCE
COMPANY, a New York Corporation;
HARTFORD FIRE INSURANCE
COMPANY, a Connecticut corporation;
INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA, a
Pennsylvania corporation; NATIONAL
UNION FIRE INSURANCE COMPANY
OF PITTSBURGH PA, a Pennsylvania
company; RLI INSURANCE COMPANY,

Civ. No. 3:08-cv-00447-AC

OPINION AND ORDER

an Illinois corporation; STONEWALL
INSURANCE COMPANY, a Nebraska
corporation; WESTCHESTER FIRE
INSURANCE COMPANY, a New York
corporation; WESTPORT INSURANCE
CORPORATION, a Missouri corporation;
ZURICH-AMERICAN INSURANCE
COMPANY, a New York corporation;

                    Defendants,

THE CONTINENTAL INSURANCE
COMPANY, a Pennsylvania corporation,

                    Third-Party Plaintiff,

          v.

INSURANCE COMPANY FOR THE
STATE OF PENNSYLVANIA, a
Pennsylvania corporation; and AMERICAN
HOME ASSURANCE COMPANY, a
foreign insurance company,

                    Third Party Defendants,

CONTINENTAL INSURANCE
COMPANY, a Pennsylvania corporation,

                    Counterclaimant,
          v.

EVRAZ OREGON STEEL MILLS, INC., a
Delaware corporation

                    Counter Defendant,

INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA, a
Pennsylvania corporation; and AMERICAN
HOME ASSURANCE COMPANY, a
foreign insurance company,

                    Third-Party Plaintiffs,

2

OPINION AND ORDER                                    [RMD]

v.

TIG INSURANCE COMPANY;

          Third-Party Defendant,

TIG INSURANCE COMPANY;

          Counterclaimant,

     v.

CONTINENTAL INSURANCE
COMPANY, a Pennsylvania corporation,

          Counterdefendant.
_____

ACOSTA, Magistrate Judge:

*Introduction*

This case arises from a contract dispute between plaintiff Evraz, Inc. ("Evraz"), and its insurers over an alleged breach of the insurers' contractual duty to provide for Evraz's legal defense in the Portland Harbor Superfund litigation. Evraz now moves for leave to substitute its counsel in this case; specifically, Evraz seeks to substitute Stoel Rives LLP as counsel of record in place of Gorden Tilden Thomas & Cordell LLP. Defendant Continental Insurance Company ("Continental") opposes Evraz's motion on three grounds: first, Stoel Rives' representation of Evraz against Continental would create a current-client conflict of interest; second, an attorney-client relationship existed between Continental and Stoel Rives in the underlying Portland Harbor Superfund litigation; and third, Stoel Rives lawyers are fact witnesses Continental may call to testify at trial. Defendants American Home Assurance Company, Granite State Insurance Company, and National Union Fire Insurance Company join with Continental in opposing Evraz's motion to substitute counsel, although only on the ground that Stoel Rives attorneys are fact witnesses who may be called to testify at trial.

OPINION AND ORDER                                                          [RMD]

The court finds that no attorney-client relationship existed between Continental and Stoel Rives under controlling Oregon Supreme Court precedent and, alternatively, under the Oregon State Bar ethics opinions upon which Continental relies.  The court also finds no representational conflict would be created by allowing Stoel Rives to represent Evraz in its coverage litigation against Continental.  Accordingly, Evraz's motion is granted.

*Factual Background*

I.  Origins of the Present Dispute

Plaintiff Evraz, Inc., a Delaware corporation that operates steel mills, owns several parcels of property in the Portland metropolitan area.  (Decl. of Joan Snyder ("Snyder Decl.") at ¶3.)  In 1999 and 2000, the Oregon Department of Environmental Quality ("DEQ") and the United States Environmental Protection Agency ("EPA") notified Evraz that it was potentially liable for investigating and cleaning up environmental contamination at the Portland Harbor Superfund Site.  (*Id*.)  Evraz has cooperated significantly with DEQ and the EPA, but has nonetheless incurred significant legal defense costs since the case began.  (*Id*. at ¶6.)

Evraz maintained insurance policies which covered liabilities due to environmental damages caused by its operations, including a policy with Continental.[1]  (*Id*. at ¶8.)  Evraz eventually informed Continental and its other insurers that they each were responsible for financing Evraz's legal defense in the Portland Harbor Superfund litigation.  (*Id*. at ¶9.)  Continental shared the responsibility of financing the defense with Evraz's other insurers, but over time Evraz exhausted all of its policies except the Continental policy.  (*Id*. at ¶10.)  Continental eventually stopped payment as well, and Evraz now brings the present action against

---

[1] Evraz was originally insured by The Fidelity and Casualty Company of New York.  (Snyder Decl. Ex. 1 at 2-3.)  In 2006, Fidelity merged with Continental, with Continental as the surviving company.  Upon the merger of the two companies, Continental became Evraz's primary insurer.

OPINION AND ORDER                                                                                      [RMD]

Continental, claiming that Continental violated its statutory and contractual obligations to finance its legal defense. (*Id*. at ¶18.)

## II.  The Parties' Relationships with Stoel Rives

Stoel Rives has represented Evraz since the early 1990s and when the environmental contamination claims arose in 1999 and 2000, Evraz asked Stoel Rives to represent it, with Snyder serving as lead defense counsel. (*Id.* at ¶4.)  Sometime between 2002 and November 2004, Evraz tendered defense of the claims to Continental. (*Id.* at ¶¶9-10.)  In November 2004, Continental agreed to participate in Evraz's defense "pursuant to a reservation of all our rights under the policies," and to "share in the reimbursement of reasonable defense costs and at rates typically paid . . . for similar defense work in the Oregon area." (*Id.* at ¶11; Snyder Decl., Ex. 1, at 1.)  Continental did not specifically contact or hire Stoel Rives in connection with the defense. (Snyder Decl. ¶11.)  Evraz was responsible for paying Stoel Rives's invoices, and Continental reimbursed Evraz for its expenses in the beginning stages of the representation. (*Id*. at ¶19.)  In 2008, Continental began sending some, but not all, reimbursement payments to Stoel Rives, who either endorsed and forwarded the checks to Evraz, or deposited each check in its client trust account for the benefit of Evraz.[2] (*Id*. at ¶¶20, 22.)  Also in 2008, Evraz filed this lawsuit against Continental for failure to defend Evraz in the Portland Harbor Superfund litigation. (Compl. (Dkt. No. 1).)

At several points during Stoel Rives's representation of Evraz, it explained to Continental that it was acting on Evraz's behalf, and not on behalf of Continental.  In a March 25, 2010, letter, Snyder wrote to Continental, "[t]his is not a matter on which Stoel Rives was directly retained by [Continental], so we are responding on behalf of your insured Evraz Inc. N.A."

---

[2] On two occasions, checks were accidentally deposited into Stoel Rives general account.  As soon as the error was discovered, the funds were immediately transferred to the client trust account. (Pl.'s Mem. in Supp. at 9 n.4.)

(Snyder Decl. Ex. 4 at 1.)  Snyder subsequently used identical language in a letter to Continental sent September 17, 2010, and again in a letter to Continental sent November 16, 2010.  (Snyder Decl., Exs. 5-6.)   Further, during a deposition taken in this case, Snyder testified, "I was performing – my perspective is that we were hired by Evraz . . . and so I was performing under my agreement with Evraz."  (Snyder Decl., Ex. 8 at 8.)  Continental also served Snyder with a subpoena duces tecum for production of documents in Stoel Rives's possession.  (Snyder Decl. at ¶¶24-26.)

### Legal Standard

The primary responsibility of regulating the conduct of lawyers in federal practice lies with the district courts, governed by the rules of professional conduct of the state in which that district lies.  *Gas-A-Tron of Az. v. Union Oil Co. of Cal.*, 534 F.2d 1322, 1325 (9th Cir. 1976). The Ninth Circuit has held that when a party wishes to disqualify opposing counsel on the basis of a conflict of interest or abuse of professional confidence, "the right of an attorney freely to practice his profession must, in the public interest, give way in cases of doubt."  *Chugach Elec. Ass'n v. United States Dist. Court*, 370 F.2d 441, 444 (1967).   Because of the potential for tactical use of disqualification, however, courts have established a "high standard of proof" for the party moving to disqualify substitute counsel.  *Smith v. Cole*, No. CV 05-372-AS, 2006 WL 1207966, at *2 (D. Or. Mar. 2, 2006), *adopted by Smith v. Cole*, No. CV 05-372-AS, 2006 WL 1280906, at *1 (D. Or. Apr. 28, 2006).   To this end, the Ninth Circuit usually will grant disqualifications due to prior representation conflicts only if a party may be prejudiced by the subsequent representation.  *See Gas-A-Tron,* 534 F.2d at 1325 n.2 (denying motion to disqualify because there was no basis for an inference that the attorney gained sensitive information that could prejudice the prior client).

6

At the same time, the rules of professional ethics serve the important functions of preserving the moral integrity of the legal system and preventing the appearance of impropriety. *Smith*, 2006 WL 1207966, at *2. Courts, including courts in the District of Oregon have held that in conflict cases, "any doubts must be resolved in favor of disqualification." *Id*. (*citing Sauer v. Xerox Corp*., 85 F. Supp. 2d 198, 199 (W.D.N.Y. 2000)). The competing interests involved in conflicts of interest cases require the court to strike a delicate balance that prevents unreasonable restrictions on an attorney's ability to practice law while nonetheless upholding the system's integrity. *See In re Huffman*, 328 Or. 567, 589-90 (1999). Thus, it makes sense for the court to operate under a legal standard which is closely tied to the rationales for rules of ethics, particularly when guarding against tactical disqualifications. *Cf. United States v. Leon*, 468 U.S. 897, 918 (1984) (tying application of the exclusionary rule to the rationales and purposes of the rule's creation). If the party seeking disqualification cannot cite facts that invoke one of the rationales for the conflict rule, a court should be skeptical of the party's motives and should apply a high standard.

Under the Oregon Rules of Professional Conduct ("RPC") an attorney may not represent a client if doing so would create a conflict of interest. RPC 1.7(a). A current conflict of interest exists if: (1) representation of one client is directly adverse to another client; (2) there is a significant risk that representing one client would materially limit the lawyer's responsibility to another client; or (3) the lawyer is related to another lawyer in the same matter. *Id*. An attorney may represent a client despite a current conflict in limited circumstances, particularly when "each affected client gives informed consent, confirmed in writing." RPC 1.7(b).

Under RPC 1.9(a), lawyer may not represent a client against a former client "in the same or substantially related matter" as the lawyer represented that former client unless the lawyer has

OPINION AND ORDER                                                                                    [RMD]

the informed written consent of both clients.  However, unlike current client conflicts, subsequent client conflicts are not imputed to the disqualified attorney's entire firm.  *Id*.  An attorney associated with the disqualified attorney's firm may represent a client in the same or substantially similar matter so long as:  (1) the current client's interests are not materially adverse to the prior client; and (2) the lawyer did not acquire confidential information that is material to the matter.  RPC 1.9.

Under THE RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS §132 n.b (2000)[3] the four main rationales for the prior client conflict rule are: (1) to prevent the lawyer from compromising his or her duties to the former client by using confidential information learned in the prior representation; (2) to prevent the lawyer from compromising duties to the present client;[4] (3) to prevent the proliferation of lawyers laying a basis for subsequent representation against current clients; and (4) to nonetheless prevent a regime in which each engagement with an attorney turns into a lifetime commitment – thus disincentivizing lawyers from taking on new business.

Under the "advocate-witness" rule of Oregon Rule of Civil Procedure 3.7 ("Rule 3.7"), an attorney who is a necessary witness at trial may not represent a party to that trial.  When a lawyer will be a necessary witness at trial, members of that lawyer's firm may nonetheless represent a party to the action so long as the witness's testimony is not prejudicial to the firm's

---

[3] While the Third Restatement of Law Governing Lawyers is not controlling authority in Oregon, the Oregon Supreme Court has repeatedly used it to guide the court's interpretation and application of the Oregon Rules of Professional Conduct.  *See, e.g., In re Hostetter*, 348 Or. 574, 591 (2010) (citing § 132 (1)); *In re Newell*, 348 Or. 396, 410 (2010) (citing § 99, cmt. g); *Reynolds v. Schrock*, 341 Or. 338, 350 (2006) (citing § 121, cmt. b).

[4] For example, by moderating the zealousness of representation to avoid revealing confidential information of the previous client.

8

client.  *Id*.  Given the conflict of interest problems inherent in trial counsel testifying against his or her client, tactical disqualification issues are not part of the Rule 3.7 analysis.

*Discussion*

I.  Attorney-Client Relationship

Whether an attorney-client relationship ever existed between Stoel Rives and Continental is the determinative issue Evraz's motion and Continental's opposition raise.  Continental claims there is a default rule in Oregon that governs insurance duty-to-defend cases, and under this rule an attorney-client relationship automatically arose between Continental and Stoel Rives when Continental began "funding" Evraz's defense.  Evraz responds that under the prevailing standards of Oregon law an attorney-client privilege did not arise, thus precluding a conflict of interest.

The court finds that an attorney-client relationship did not exist between Continental and Stoel Rives.  Resolution of this issue begins with Continental's assumption that legal ethics opinions are controlling of this court's determination.  They are not.  Several Oregon State Bar ethics opinions suggest that in some circumstances, an insurer retaining counsel pursuant to a duty to defend an insured gives rise to a tri-partite attorney-client relationship between the attorney and both the insurer and insured.  *See* OSB Formal Op. Nos. 2005-121, 2005-77, 2005-157, 2005-30.  Continental overlooks well-established Oregon law that legal ethics opinions are advisory only.  *See, e.g.*, *Application of Kraus*, 295 Or. 743, 751 (1983) (Oregon legal ethics opinions "are only advisory in nature"); *In re Conduct of Lathen*, 294 Or. 157, 164 (1982) (Oregon legal ethics opinions "of course . . . are not binding authority"); *Brown v. Oregon State Bar*, 293 Or. 446, 451 (1982) ("The recommendations and the ethics opinions which [the Oregon State Bar] publish are advisory and are not binding on this court.").  *See also Couey v. Brown*,

9

257 Or. App. 434, 441 (2013) (recognizing ethics opinions as "advisory"). None of the ethics opinions Continental cites have been interpreted or adopted by the Oregon Supreme Court.

The Oregon Supreme Court determines the standards that govern attorneys and its standard controls this court's determination here. *Brown*, 293 Or. at 451 ("The disciplinary rules are standards adopted by this court to govern the supervision and discipline of attorneys. The professional discipline of attorneys is within the exclusive jurisdiction of this court."). The supreme court established the Oregon standard for determining the point at which the attorney-client relationship arises in *In re Weidner*, 310 Or. 757, 768 (1990). There, the supreme court held that the attorney-client relationship need not be explicit but may be implied when each of two elements is present: (1) the putative client subjectively believes the relationship exists; and (2) based on the evidence, the putative client's belief is objectively reasonable. *Id.* at 770. In determining whether the attorney-client relationship exists, the court considers all available evidence of reasonableness, but is particularly attentive to whether the putative client intended the relationship to arise and "whether the services performed were of the kind traditionally done professionally by lawyers." *Id.* at 768.

> In Oregon, an implied attorney-client relationship is established where "the putative client [holds] a subjective belief that the relationships exists, coupled with an objectively reasonable basis for the belief." The lawyer's subjective understanding is irrelevant and the objectively reasonable basis is evaluated in light of the attorney's conduct. "The evidence must show that the lawyer understood or should have understood that the relationship existed, or acted as though the lawyer was providing professional assistance or advice on behalf of the putative client." In sum, having established a subjective belief, the putative client must also show through objective evidence that the lawyer gave him or her a reasonable basis upon which to base this subjective belief.

*Tinn v. EMM Labs, Inc.,* 556 F. Supp. 2d 1191, 1192-93 (D. Or. 2008) (internal citations omitted).

OPINION AND ORDER                                                                    [RMD]

Continental cannot satisfy the *Weidner* test on the record before this court. First, the evidence is insufficient to support the conclusion that Continental subjectively believed an attorney-client relationship arose between it and Stoel Rives when Evraz "tendered the defense" to Continental. It relies on the insurance defense "dual representation" analysis articulated in the Oregon ethics opinions, but the first of these ethics opinions issued in 2005, one year after Evraz tendered its defense to Continental in 2004. Thus, Continental could not possibly have relied on the ethics opinions' "dual representation" discussion to conclude that Stoel Rives represented it in 2004.

Furthermore, after 2005 Stoel Rives put Continental on notice it was not representing Continental. Stoel Rives sent three letters to continental between March and November of 2010 which contained the phrase, "[t]his is not a matter on which Stoel Rives was directly retained by [Continental], so we are responding on behalf of your insured Evraz Inc. N.A." (Snyder Decl. Exs. 4-6.) Continental did not respond to or object to these statements, never stated its belief that Stoel Rives represented it in the Portland Harbor Superfund litigation, and took no other contemporaneous action that would indicate Continental believed Stoel Rives represented it.

Additionally, virtually all communication from Stoel Rives went directly to Evraz, not Continental. Stoel Rives sent all invoices directly to Evraz, which paid them and forwarded them to Continental for reimbursement. When Continental sought to dispute the rates Stoel Rives charged, it contacted Evraz, not Stoel Rives, to obtain an itemized list of charges. Further, Stoel Rives did not send and Continental did not request update letters or other correspondence about the case, communications typically and regularly provided by lawyers retained by an insurance company in the insurance-defense context. Stated simply, at the times in question Continental never acted as an insurer would act toward insurance defense counsel.

11

Finally, Continental's subsequent conduct related to this case further suggests it never sincerely believed it was represented by Stoel Rives. Continental has never challenged with contrary testimony or evidence Snyder's assertion at deposition that she believed she was representing only Evraz in the Portland Harbor Superfund litigation. Continental served Snyder with a subpoena duces tecum to obtain documents in Stoel Rives' possession; had Continental believed Stoel Rives to be its lawyers, Continental instead would have asserted its right as a client to receive upon request copies of the documents. In sum, the record does not support the conclusion that Continental subjectively believed Stoel Rives represented it in the Portland Harbor Superfund litigation.

Nor does Continental satisfy the *Weidner* test's objective prong, because it has not shown "through objective evidence that the lawyer gave [it] a reasonable basis upon which to base this subjective belief." *Tinn*, 556 F. Supp. 2d at 1193. Continental's first argument to support the objective prong is "'the objective facts on which a reasonable person would rely' ***are*** the OSB Formal Opinions that clearly establish that an attorney engaged in insurance defense has two clients: the insurer and the insured." (Continental's Op. to Mot. for Leave to Withdraw ("Opp. Mem.") at 13-14 (emphasis in original).) This position is objectively unreasonable for two reasons. First, Continental could not have relied on these Oregon ethics opinions or expected Stoel Rives was acting consistent with them because they did not exist in 2004, when Continental accepted Evraz's tender of defense. No party can reasonably rely on legal authority that did not exist at the time the reliance on it purportedly occurred. Second, Continental could not form a reasonably objective basis that is contrary to the clear and controlling law of the forum jurisdiction. Since at least 1982 the Oregon Supreme Court has clearly stated that Oregon State Bar ethics opinions are advisory only, and the *Weidner* test for determining the existence of

OPINION AND ORDER                                                                                    [RMD]

an attorney-client relationship had existed in Oregon fourteen years before Evraz tendered its defense to Continental in 2004. The record shows that instead Continental assumed facts without confirming the legal basis for its assumption, and its unsupported assumption cannot support an objectively reasonable basis under the *Weidner* test.

Furthermore, the record lacks objective evidence of an attorney-client relationship between Stoel Rives and Continental. Continental produced no letter, memo, email, or other contemporaneous document from Stoel Rives that supports an objectively reasonable basis to conclude that Stoel Rives represented Continental. It produced no document from it to Stoel Rives claiming, expressly or implicitly, to be Stoel Rives's client, which Stoel Rives then should have corrected or refuted. Continental has produced no evidence of requests or demands to Stoel Rives' insisting on compliance with traditional insurance-defense relationship hallmarks such as creating litigation budgets, providing direct, regular status updates, setting maximize amounts for hourly rates, or requiring authorization from Continental before engaging in various litigation tasks. And, at the time Evraz tendered its defense to Continental, Stoel Rives had been representing Evraz in the Portland Harbor Superfund litigation for five years and Evraz generally since the early 1990s, an attorney-client relationship created without any involvement by or connection with Continental. Continental has pointed to no act or representation by Stoel Rives that would give Continental a reasonable basis to think Stoel Rives also became its lawyer in the Portland Harbor Superfund litigation after Continental accepted Evraz's tender of defense.

Continental offers the declaration of Thomas Bariball to support its position, but it contains only four general and conclusory paragraphs (*see* Decl. of Thomas Bariball ("Bariball Decl.") ¶¶ 1-4), none of which set forth specific facts that support an objectively reasonable basis to conclude under *Weidner* that an attorney-client relationship existed between Stoel Rives

and Continental.  Notably, Bariball represents he is the Continental employee knowledgeable about Evraz's tender and the Portland Harbor Superfund litigation (Bariball Decl.¶ 1) and Continental's position necessarily assumes an attorney-client relationship existed with Stoel Rives between 2004, when Evraz tendered its defense to Continental, and 2008, when Evraz filed suit against Continental over coverage issues. Yet Baribell's declaration contains no reference to and is not supported by any correspondence or emails which contemporaneously documented the common interactions that necessarily would have occurred between lawyer and client during the four years of the purported relationship.  Bariball's declaration provides insufficient evidence to support finding an objectively reasonable basis that an attorney-client relationship existed between Stoel Rives and Continental.

Even if, as Continental urges, the court were to apply the default rule, the court still would find no attorney-client relationship existed.  The foundation of the default rule's applicability is that the dual-client relationship arises in a traditional insurance-defense context, but that context does not exist here.  On that point, Continental overlooks the absence of two crucial facts:  it did not hire and did not pay Stoel Rives.

Evraz, not Continental, hired Stoel Rives to represent it in the Portland Harbor Superfund litigation.  Evraz hired Stoel Rives five years before Continental accepted Evraz's tender of defense under a reservation of rights in November 2004.  At the time Continental accepted Evraz's tender of defense, Stoel Rives had served as Evraz's legal counsel since the early 1990s. Continental does not dispute any of these facts which chronicle Stoel Rives' hiring as Evraz's counsel, and it points to no preexisting insurance-defense relationship or attorney-client relationship with Stoel Rives which might explain how a conclusion that it had hired Stoel Rives to represent Evraz.

14

OPINION AND ORDER                                                                                    [RMD]

Evraz, not Continental, paid Stoel Rives.  Continental disputes this by stating it "funded" Evraz's defense pursuant to the insurance contract, but undisputed is that Continental never paid Stoel Rives, a critical distinction here because of Continental's rigid reliance on the context-specific default rule.  Here, Continental reimbursed Evraz who then paid Stoel Rives, which Evraz had directly retained and paid to represent it long before Continental accepted Evraz's tender of defense.  The payment relationship between Evraz and Stoel Rives never changed after Continental appeared.  Continental provides neither analysis nor authority to support its assertion that it should be found to have paid Stoel Rives as the default rule contemplates and, thus, trigger its application to the specific facts present here.

Finally, the court's determination of the attorney-client relationship issue is made against the higher burden of proof imposed on Continental under the tactical disqualification principle. Continental identified no confidential information Stoel Rives acquired during the purported attorney-client relationship that it could use to Continental's detriment.  It offered no evidence or argument on this key element to demonstrate how and why it would be prejudiced by Stoel Rives representing Evraz.

In short, Continental has provided no substantive reason to support its position that Stoel Rives should be disqualified from representing Evraz in this case.  Lacking this showing, the record that suggests Continental seeks Stoel Rives' disqualification for tactical purposes.  Under the "high standard of proof" applicable in such circumstances, Continental is far from meeting its burden here for the reasons discussed above.  For those same reasons, however, the court's decision would be the same even if it did not consider the tactical disqualification standard.

In sum, for the reasons stated above the court finds that no attorney client relationship arose between Stoel Rives and Continental.  Because Continental was never a Stoel Rives client,

OPINION AND ORDER                                                                                    [RMD]

the court will not disqualify Stoel Rives from this case on the basis of a successive representation conflict.

## II.  Conflict arising from the advocate-witness rule of Or. RPC 3.7

Continental and the other insurer defendants argue that Stoel Rives's lawyers, including Snyder, are necessary witnesses at trial because they have intimate knowledge of Stoel Rives's representation of Evraz in the Portland Harbor Superfund litigation.  Continental contends it will solicit testimony from Snyder about "the defense counsel payment arrangement, including any alleged agreement concerning payment and the reasonableness of rates paid."  (Opp. Mem. at 24.)  Continental claims Stoel Rives therefore should be disqualified under Rule 3.7.

Under Oregon Rule of Professional Conduct 3.7 ("Rule 3.7"):

(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a witness on behalf of the lawyer's client unless:

(1) The testimony relates to an uncontested issue;

(2) The testimony relates to the nature and value of legal services rendered in the case;

(1) The lawyer is appearing *pro se*.

(b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness on behalf of the lawyer's client.

(c) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a member of the lawyer's firm may be called as a witness other than on behalf of the lawyer's client, the lawyer may continue the representation until it is apparent that the lawyer's or firm member's testimony is or may be prejudicial to the lawyer's client.

Although Snyder will be a necessary witness at trial and, according to Rule 3.7, may not represent Evraz herself, a member of Snyder's firm may serve as Evraz's trial counsel so long as Snyder's trial testimony will not prejudice Evraz.  Continental claims Snyder's disqualification should impute to all  Stoel Rives attorneys because it has previously used Snyder's testimony

16

against Evraz in opposition to a now-withdrawn motion for summary judgment. However, Continental fails to articulate the contents of that testimony or explain why it suggests Snyder's trial testimony would be prejudicial to Evraz. Beyond that, Continental fails to cite specific deposition testimony or other evidence on the record to support its argument that Snyder's disqualification should be imputed to the rest of Stoel Rives. Therefore, based on the current record, the court cannot conclude that all Stoel Rives attorneys are disqualified from representing Evraz at trial under Or. RPC 3.7.[5]

*Conclusion*

For the reasons stated above, the court finds that Stoel Rives is not disqualified from representing Evraz in the present action under Or. RPC 1.7, 1.9, or 3.7. Evraz's motion to withdraw and substitute counsel (Dkt # 278) is GRANTED.

IT IS SO ORDERED

DATED this 21st day of November, 2013.

<u>            /s/ John V. Acosta            </u>
JOHN V. ACOSTA
United States Magistrate Judge

---

[5] The court reaches this decision without prejudice to the Defendants' ability to raise this argument again as the record becomes more developed.

OPINION AND ORDER                                                                [RMD]