IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EVRAZ INC., N.A., a Delaware
Corporation,

                        Plaintiff,

          v.

RIDDELL WILLIAMS P.S.

          v.

THE CONTINENTAL INSURANCE
COMPANY, a Pennsylvania Corporation;
CENTRAL NATIONAL INSURANCE
COMPANY OF OMAHA, a Nebraska
Corporation; CENTURY INDEMNITY
COMPANY, a Pennsylvania Corporation;
GRANITE STATE INSURANCE
COMPANY, a Pennsylvania Corporation;
AMERICAN HOME ASSURANCE
COMPANY, a New York Corporation;
HARTFORD FIRE INSURANCE
COMPANY, a Connecticut corporation;
INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA, a

Civ. No. 3:08-cv-00447-AC

OPINION AND ORDER

Pennsylvania corporation; NATIONAL
UNION FIRE INSURANCE COMPANY
OF PITTSBURGH PA, a Pennsylvania
company; RLI INSURANCE COMPANY,
an Illinois corporation; STONEWALL
INSURANCE COMPANY, a Nebraska
corporation; WESTCHESTER FIRE
INSURANCE COMPANY, a New York
corporation; WESTPORT INSURANCE
CORPORATION, a Missouri corporation;
ZURICH-AMERICAN INSURANCE
COMPANY, a New York corporation;

     Defendants,

THE CONTINENTAL INSURANCE
COMPANY, a Pennsylvania corporation,

     Third-Party Plaintiff,

    v.

INSURANCE COMPANY FOR THE
STATE OF PENNSYLVANIA, a
Pennsylvania corporation; and AMERICAN
HOME ASSURANCE COMPANY, a
foreign insurance company,

     Third Party Defendants,

CONTINENTAL INSURANCE
COMPANY, a Pennsylvania corporation,

     Counterclaimant,
    v.

EVRAZ OREGON STEEL MILLS, INC., a
Delaware corporation

     Counter Defendant,

INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA, a
Pennsylvania corporation; and AMERICAN

OPINION AND ORDER     2       [RMD]

HOME ASSURANCE COMPANY, a
foreign insurance company,

                        Third-Party Plaintiffs,

      v.

TIG INSURANCE COMPANY;

                        Third-Party Defendant,

TIG INSURANCE COMPANY;

                        Counterclaimant,

      v.

CONTINENTAL INSURANCE
COMPANY, a Pennsylvania corporation,

                        Counterdefendant.

ACOSTA, Magistrate Judge:

*Introduction*

      Continental Insurance Company ("Continental") has filed a Supplemental Response in Opposition to Plaintiff's Motion to Substitute Counsel ("Supplemental Opposition"). In its November 21, 2013, Opinion and Order, the court granted Evraz Inc., N.A.'s ("Evraz") Motion for Leave to Withdraw or Substitute Counsel ("Motion to Substitute Counsel"). Therefore, the court treats Continental's Supplemental Opposition as a motion to reconsider its November 21, 2013, decision. The court declines to reconsider its previous decision on the merits, and will not disqualify Stoel Rives, Inc. ("Stoel Rives") as Evraz's substitute counsel.

*Factual Background*

I.  Origins of the Present Dispute

      Plaintiff Evraz, a Delaware corporation that operates steel mills, owns several parcels of property in the Portland metropolitan area. (Decl. of Joan Snyder ("Snyder Decl.") at ¶3.) In 1999

OPINION AND ORDER               3                      [RMD]

and 2000, the Oregon Department of Environmental Quality ("DEQ") and the United States Environmental Protection Agency ("EPA") notified Evraz that it was potentially liable for investigating and cleaning up environmental contamination at the Portland Harbor Superfund Site. (*Id*.) Evraz has cooperated significantly with DEQ and the EPA, but has nonetheless incurred significant legal defense costs since the case began. (*Id*. at ¶6.)

Evraz maintained insurance policies which covered liabilities due to environmental damages caused by its operations, including a policy with Continental.[1] (*Id*. at ¶8.) Evraz eventually informed Continental and its other insurers that they each were responsible for financing Evraz's legal defense in the Portland Harbor Superfund litigation. (*Id*. at ¶9.) Continental shared the responsibility of financing the defense with Evraz's other insurers, but over time Evraz exhausted all of its policies except the Continental policy. (*Id*. at ¶10.) Continental eventually stopped payment as well, and Evraz now brings the present action against Continental, claiming that Continental violated its statutory and contractual obligations to finance its legal defense. (*Id*. at ¶18.)

## II.  The Parties' Relationships with Stoel Rives

Stoel Rives has represented Evraz since the early 1990s and when the environmental contamination claims arose in 1999 and 2000, Evraz asked Stoel Rives to represent it, with Snyder serving as lead defense counsel. (*Id*. at ¶4.) Sometime between 2002 and November 2004, Evraz tendered defense of the claims to Continental. (*Id*. at ¶¶9-10.) In November 2004, Continental agreed to participate in Evraz's defense "pursuant to a reservation of all our rights under the

---

[1] Evraz was originally insured by The Fidelity and Casualty Company of New York. (Snyder Decl. Ex. 1 at 2-3.) In 2006, Fidelity merged with Continental, with Continental as the surviving company. Upon the merger of the two companies, Continental became Evraz's primary insurer.

policies," and to "share in the reimbursement of reasonable defense costs and at rates typically paid . . . for similar defense work in the Oregon area." (*Id.* at ¶11; Snyder Decl., Ex. 1, at 1.) Continental did not specifically contact or hire Stoel Rives in connection with the defense. (Snyder Decl. ¶11.) Evraz was responsible for paying Stoel Rives's invoices, and Continental reimbursed Evraz for its expenses in the beginning stages of the representation. (*Id.* at ¶19.) In 2008, Continental began sending some, but not all, reimbursement payments to Stoel Rives, who either endorsed and forwarded the checks to Evraz, or deposited each check in its client trust account for the benefit of Evraz.[2] (*Id.* at ¶¶20, 22.) Also in 2008, Evraz filed this lawsuit against Continental for failure to defend Evraz in the Portland Harbor Superfund litigation. (Compl. (Dkt. # 1).)

At several points during Stoel Rives's representation of Evraz, it explained to Continental that it was acting on Evraz's behalf, and not on behalf of Continental. In a March 25, 2010, letter, Snyder wrote to Continental, "[t]his is not a matter on which Stoel Rives was directly retained by [Continental], so we are responding on behalf of your insured Evraz Inc. N.A." (Snyder Decl. Ex. 4 at 1.) Snyder subsequently used identical language in a letter to Continental sent September 17, 2010, and again in a letter to Continental sent November 16, 2010. (Snyder Decl., Exs. 5-6.) Further, during a deposition taken in this case, Snyder testified, "I was performing – my perspective is that we were hired by Evraz . . . and so I was performing under my agreement with Evraz." (Snyder Decl., Ex. 8 at 8.) Continental also served Snyder with a subpoena duces tecum for production of documents in Stoel Rives's possession. (Snyder Decl. at ¶¶24-26.)

*Procedural History*

---

[2] On two occasions, checks were accidentally deposited into Stoel Rives general account. As soon as the error was discovered, the funds were immediately transferred to the client trust account. (Pl.'s Mem. in Supp. at 9 n.4.)

In September 2013, Evraz requested the court's leave to withdraw and substitute counsel. *Evraz Inc., N.A. v. Continental Ins. Co.*, Civ. No. 3:08-cv-00447-AC, 2013 WL 6174839, at *1 (D. Or. Nov. 21, 2013). Continental opposed the motion, claiming Stoel Rives was disqualified from representing Evraz — first because Continental had an attorney-client relationship with Stoel Rives and second because Snyder was a necessary trial witness whose testimony would prejudice Evraz. *Id.* In its November 21, 2013, Opinion and Order, the court granted Evraz's motion, and found Stoel Rives was not disqualified from representing Evraz because no attorney-client relationship arose between Stoel Rives and Continental. *Id.* Although the court agreed with Continental that Snyder, as a necessary witness at trial, could not serve as Evraz's trial counsel, it declined to impute the disqualification to other Stoel Rives attorneys because Continental did not meet its evidentiary burden of proving Snyder's trial testimony would prejudice Evraz. *Id.* at *8. The court nonetheless granted Continental leave "to raise this argument again as the record becomes more developed." *Id.* at *8 n.5.

Continental filed objections to the court's Opinion and Order which Judge Mosman reviewed and rejected. (Dkt. #318.) Continental then filed a "Supplemental Opposition," in which it renewed its argument that the court should disqualify Stoel Rives under RPC 3.7. (Dkt. #320.) In support of its renewed opposition to Evraz's motion, Continental submitted evidence: (1) the Confidential settlement agreement between Oregon Steel Mills, Inc. and TIG Insurance Company; (2) excerpts from the "indemnity Cost Details SENT TO CNA 7-30-13" spreadsheet; (3) a January 3, 2012 tender letter to Oregon Steel Mills, Inc. from Fireman's Fund Insurance Company; (4) excerpts from Snyder's deposition; (5) a July 30, 2012 letter from Stoel Rives attorney Kristen Sterling to Continental's counsel; (6) excerpts from the "Ongoing Summary & Defense Cost Detail Sent to

CNA and DCBS 7-30-13" spreadsheet; and (7) excerpts from the deposition of Andrew Gilpin.

*Discussion*

Before the court reviews the substance of Continental's Supplemental Opposition, it must first determine the applicable legal standard. This determination depends heavily on the actual nature of Continental's Supplemental Opposition. In determining the appropriate procedural treatment of Continental's filing, the court will look first to the relief Continental seeks, and second, examine the procedural context in which Continental filed its request.

First, the court must determine what Continental seeks through submission of its Supplemental Opposition. The Federal Rules of Civil Procedure require that "an application to the court for an order shall be by motion . . . ." FED. R. CIV. P. 7(b). Similarly, Black's Law Dictionary defines "motion" as "[a] written or oral application requesting a court to make a specified ruling or order." BLACK'S LAW DICTIONARY 1106 (9th ed. 2009). Continental's Supplemental Opposition, at its most basic level, asks the court to issue an order disqualifying Stoel Rives from serving as Evraz's trial representation. Thus, Continental's filing is clearly a motion, as it requests an order from the court. Because of the particular remedy sought by the motion, the court determines it is most appropriate to treat Continental's Supplemental Opposition as one of two types of motion: (1) a motion to reconsider the court's recent ruling on Evraz's Motion for Leave to Withdraw and Substitute Counsel or (2) an independent motion to disqualify Stoel Rives as Evraz's counsel. Deciding between the two requires the court to consider the procedural context in which Continental filed its motion.

If designated by an Article III Judge, a federal magistrate judge may, with some exceptions, "hear and determine any pretrial matter pending before the court." 28 U.S.C. § 636(b)(1)(A). If a

party to that matter files objections, an Article III judge "may reconsider any pretrial matter" if the magistrate's order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). This contrasts with dispositive matters and matters over which the court has full consent to magistrate jurisdiction. In those cases, a party may file objections to the Magistrate's Findings and Recommendations, and the Article III judge must undertake de novo review of the Magistrate's decision. 28 U.S.C. § 636(b)(1)(C). Here, Continental requested Article III review of a nondispositive pretrial matter, and Judge Mosman was required to apply the "clearly erroneous or contrary to law" standard. *See also*, *Becker v. Willamette Community Bank*, No. 6:12-cv-01427-TC, 2014 WL 667584, at *1 (D. Or. Feb. 18, 2014) (applying clearly erroneous or contrary to law standard in review of pretrial matter), *Gesselle v. Jack in the Box Inc.,* No. 3:10-CV-00960-BR, 2013 WL 4542033, at *3 (D. Or. Aug. 27, 2013) (same). For the purposes of § 636, a matter is a "pretrial matter," and thus appropriate for disposition by a magistrate judge so long as it is not (1) one of the eight matters specifically articulated in § 636(b)(1)(A) or (2) otherwise dispositive to the case. *Maisonville v. F2 Am., Inc.,* 902 F.2d 746, 747-48 (9th Cir. 1990) ("any motion not listed [in 28 U.S.C. § 636(b)(1)(A)], nor analogous to a motion listed in this category, falls within the non-dispositive group of matters which a magistrate may determine.").

A motion to substitute counsel is not dispositive of a case's merits, and other circuits have concluded that matters of substituting counsel are properly under a magistrate judge's § 636(b)(1)(A) jurisdiction. *United States v. Brown*, 79 F.3d 1499, 1503 (7th Cir. 1996) ("§ 636(b)(1)(A) permits district judges to designate non-Article III magistrate judges for the determination of nondispositive pretrial motions, such as motions for substitute counsel."). This court had statutory jurisdiction over Evraz's Motion to Withdraw or Substitute Counsel and properly

rendered the court's final decision on that motion.  The finality of the court's decision was only reaffirmed when Judge Mosman denied Continental's request for review.

Continental now requests this court revisit its ruling on Evraz's Motion to Substitute Counsel based on arguments advanced in its original opposition and evidence in its possession, but not submitted, at the time it opposed Evraz's Motion to Substitute Cousnel.  Continental argues only that Stoel Rives should be disqualified under RPC 3.7, and now offers evidence previously available to it to support its argument.  Continental's request to disqualify Stoel Rives was not made in a procedural vacuum, but immediately following a final decision by the court granting Evraz's Motion to Substitute Counsel.  This fact, coupled with Continental's reliance on an argument already presented in its original opposition, suggest Continental's motion is not an independent motion to disqualify.

In similar procedural circumstances as those faced now by the court, district courts generally treat "supplemental opposition" filings as motions for reconsideration.  *See Abaxis, Inc. v. Cepheid*, No. 10-CV-2840-LHK, 2012 WL 3255601, at *3 (N. D. Cal. Aug. 8, 2012) ("After the Court has issued an order, any supplemental briefing opposing the order functions as a motion for the Court to reconsider its previous order.  Accordingly, the Court will treat Cepheid's request to file a supplemental opposition as a motion for leave to file a motion for reconsideration."); *Lavine v. City of Hayward*, No. 04-C-201-C, 2004 WL 1946412, at *1 (W. D. Wis. Aug. 27, 2004) ("I will treat the supplemental opposition as a motion for reconsideration.").  Because Continental's Supplemental Opposition seeks the same result and was filed in a similar procedural context as a motion for reconsideration would, the court treats it as such.

The Federal Rules of Civil Procedure do not explicitly discuss motions for reconsideration.

OPINION AND ORDER                          9                                    [RMD]

*Allen v. Nw. Permanente, P.C.*, No. 3:12-cv-0402-ST, 2012 WL 5996935, at *1 (D. Or. Nov. 30, 2012).  However, several rules contemplate a situation where the court may revisit prior decisions and order them amended, rescinded, or reversed.  FED. RS. CIV. P. 54(b), 59(e), 60(b).  After the court has entered a final judgment in the matter, a party may seek relief from that judgement "under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment)."  *Allen*, 2012 WL 5996935, at *1, *quoting Sch. Dist. No. 1J, Multnomah County, Or. v. AcandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993).  Rule 60(b) provides that a court may "relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons:"

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud . . . , misrepresentation or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6)  any other reason that justifies relief.

FED. R. CIV. P. 60(b).  Rule 59(e) does not articulate a test to determine when a court should reconsider a prior decision, but courts have determined that reconsideration under 59(e) is "appropriate if the district court (1) is presented with newly discovered evidence, (2) committed a clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."  *Sissoko v. Rocha,* 440 F.3d 1145, 1153-54 (9th Cir. 2006), *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

However, Rules 59(e) and 60(b) apply only to "final judgments and appealable interlocutory orders."  *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 466-67 (9th Cir. 1980).   The court's Opinion and Order on Evraz's Motion to Substitute Counsel was not a final judgment or appealable

interlocutory order, so the court must find authority to reconsider elsewhere. Federal Rule 54(b) provides that, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment . . . ." Further, the Ninth Circuit has determined that district courts have the "inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient*." City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2011).

Reconsideration under Rule 54(b) and the court's inherent authority is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *PacifiCorp v. Gas Transmission Nw. Corp*, No. 3:10-cv-00099-PK, 2014 WL 186903, at *5 (D. Or. Jan. 14, 2014), *quoting Kona Enters., Inc.,* 229 F.3d at 890. As a result, courts tend to apply a rigorous standard. Courts analyzing reconsideration under Rule 54 and the court's inherent power most commonly use a four-prong test similar to those used for analysis under Rule 59(e) and 60(b). *See American Rivers v. NOAA Fisheries*, No. CV-04-00061-RE, 2006 WL 1983178, at *2 (D. Or. July 14, 2006) (listing cases); *but see PacifiCorp*, 2014 WL 186903, at *5 (applying a three-pronged "Rule 59(e)" test). The court follows the four-prong test and thus will reconsider its Opinion and Order only if:

> (1) there are material differences in fact or law from that presented to the court and, at the time of the court's decision, the party moving for reconsideration could not have known the factual or legal differences through reasonable diligence;
> (2) there are new material facts that happened after the Court's decision;
> (3) there has been a change in law that was decided or enacted after the court's decision; or
> (4) the movant makes a convincing showing that the court failed to consider material facts that were presented to the court before the court's decision.

*American Rivers*, 2006 WL 1983178, at *2.

OPINION AND ORDER                    11                    [RMD]

Applying this test, the court finds no justification to reconsider its prior decision.  There is no "new evidence," there have been no "new material facts," there has been no intervening change in law, and the court did not overlook facts previously presented to the court.  Continental relies solely on its argument that the court should disqualify Stoel Rives because Snyder's testimony at trial will prejudice Evraz.  In support of this argument, Continental submits eight exhibits which were in its possession when it filed its opposition to Evraz's motion to Substitute.  This is not "new evidence" which would compel the court to reconsider its decision; it is merely evidence which Continental, for unexplained reasons, knowingly failed to submit in support of its original opposition.  This falls well short of meeting the reconsideration standard.  *See, e.g., American Rivers*, 2006 WL 1983178, at *2.  "Motions for reconsideration . . . are generally disfavored, and may not be used to present new arguments or evidence that could have been raised earlier." *Id., Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991) (finding that the trial court did not abuse its discretion by denying a motion for reconsideration when the moving party presented no arguments which the court had not already considered).

Even if the court were to apply the more liberal "Rule 60(b)" test, reconsideration would be inappropriate.  Of the six factors in the "Rule 60(b)" test, only two can reasonably apply to the facts of this case — (1) newly discovered evidence that, with reasonable diligence, could not have been discovered [at the time of the original motion] and (2) any other reason that justifies relief.  As the court observed, Continental's letters and deposition excerpts were in its possession at the time of the first motion and are not "new evidence."

The court also is not persuaded to reconsider its decision based on "any other reason that justifies relief."  To qualify for the "catch-all provision) of Rule 60(b)(6), a party must "establish

the existence of extraordinary circumstances which prevented or rendered him unable to" prosecute his argument during the initial motion. *Martella v. Marine Cooks and Stewards Union, Seafarers Intern. Union of North America, AFL0CIO*, 448 F.2d 729, 730 (9th Cir. 1971) (per curiam). There are no such "extraordinary circumstances" present in this case. The court acknowledges that at oral argument, Continental stressed the importance of reviewing its argument on a more developed record because the court has a duty to assure ethical conduct in its courtrooms and bolster public confidence in the judicial system. However, Continental's argument presumes prejudice, which it has not demonstrated has occurred or will occur. Therefore, the court will not reconsider its Opinion and Order on Evraz's Motion to Substitute Counsel, and denies Continental's motion to reconsider.

*Conclusion*

For the aforementioned reasons, Continental's Supplemental Response in Opposition to Motion to Withdraw or Substitute an Attorney (Dkt. No. 320), which the court construes as a motion for reconsideration is DENIED.

IT IS SO ORDERED

Dated this 16th day of May 2014

_____/s/ John V. Acosta_____
JOHN V. ACOSTA
United States Magistrate Judge